In the Matter of the Petition for an Order Vacating Arbitration Award between LASHCO, INC., Petitioner,

and

David P. ERICKSON, Respondent.

No. 88 C 6465.

United States District Court, N.D. Illinois, E.D.

Dec. 7, 1988.

James J. Moylan, Peter S. Lake, James J. Moylan & Associates, Ltd., Chicago, Ill., for petitioner.

David P. Erickson, Chicago, Ill., pro se.

## MEMORANDUM OPINION

BRIAN BARNETT DUFF, District Judge.

Lashco, Inc. has applied for an order under § 10 of the Federal Arbitration Act, codified at 9 U.S.C. § 10 (1982), vacating an arbitration award entered by the Chicago Board Options Exchange, Inc. ("CBOE") in favor of David P. Erickson. Since the dispute that resulted in the award involves trading in securities on the facilities of national securities exchanges, which are regulated under § 6 of the Securities and Exchange Act of 1934, codified at 15 U.S.C. § 78f (1982), this court has exclusive jurisdiction over challenges to the arbitrator's award. See *id.* at § 78aa. Mr. Erickson resists Lashco's application, and asks this court to "affirm the award ... and award [him] his costs for defending this matter." Answer to First Amended Petition, 3. This court will treat Mr. Erickson's pro se request as an application for confirmation of the CBOE award pursuant to 9 U.S.C. § 9.

The events that are central to this dispute took place on October 20 and 21, 1987. These were the days following "Black Monday," a day on which American stock markets witnessed the greatest decline in share values since the Great Crash of 1929. The markets on the days after Black Monday

were fevered, with trading continuing at near-record volumes. Positions taken one minute were abandoned minutes later, often out of fear or panic. The system of "perfect information" so often touted by economists bore little resemblance to what was happening on the exchange floors that week, as events of those days revealed how world markets continue to be subservient to the actions of exchange presidents, government securities regulators, and the chairmen of central banks.

Erickson and the employees of Lashco probably had no opportunity to mull over these global events during the days following Black Monday. From all accounts, the exchange floors were nightmarish worlds that week, and it is not unusual for litigation to follow in the wake of such horrors. Erickson was a market-maker member of the CBOE that week. At 9:57 on the morning of October 20—some called the day "Terrible Tuesday"—he placed an order to sell 3,000 shares of Champion International Corp. stock at $30/share. He submitted his order to Lashco, whose principal business is the execution of trades in securities that underlie stock options that are listed on various American options exchanges. Upon receipt of Erickson's order, Lashco transmitted it to the New York Stock Exchange ("NYSE").

Twenty minutes later Erickson changed his mind and proceeded to cancel the order. From the briefs filed by the parties it appears that twenty minutes is the limit for cancellation orders, but Erickson managed to submit his request in time. Lashco communicated it to the NYSE, and everyone moved on to other business. The next morning Erickson's clearing firm provided Erickson with a summary of his activities of the previous day. That report revealed that the NYSE had executed his sell order at 1:57 p.m.—nearly 3½ hours after Erickson had cancelled it.

Erickson and his only witness at the arbitration hearing, Scott Samuelson, testified that after learning of the mistaken trade, Erickson approached a Lashco employee, Martha Ramirez, and told her of the error. Ramirez claimed that Erickson had cancelled his sell order too late. Erickson vehemently disagreed. Erickson testified that this caught the attention of Lashco's floor manager, Michael O'Neill, who approached Erickson to find out what was going on. Erickson told O'Neill about the mistaken trade, and Ramirez repeated her belief that Erickson had been late. At that moment O'Neill apparently sided with Ramirez, and a frustrated Erickson stalked away. Transcript of Arbitration Hearing, 10–11, 17–18, 24, 25, 32–37.

Erickson returned to that part of the floor where his mentor Samuelson worked. Samuelson testified that a "hysterical" Erickson told him, "They are not doing anything. They are going to make me eat this trade." Samuelson urged Erickson to calm down, and since Erickson had sold the 3,000 shares short, he advised Erickson to "do what we all do," cover the trade. About this time the market was opening, and already the price of Champion stock had risen to $31.50. Erickson frantically called Lashco and placed a bid for 4,000 shares of Champion stock at $31.50—1,000 shares more than he needed to cover. Meanwhile the stock's price had risen to $32.00, which prompted Erickson to buy a lot of options at $30. When Samuelson learned of this, he told an agitated Erickson to "hold your water for a while" and try to sell off some of the options. Transcript at 20–22.

Later that morning Samuelson and Erickson sought out O'Neill in hopes of an explanation. Erickson wanted to recover his losses on the covering sale, which were $4,500 (3,000 shares times $1.50, the difference in the price of the mistaken sell order and the covering contract). Samuelson testified that at this meeting, O'Neill was more cooperative. He first promised to investigate the mistaken sale and cancellation, and "cut a check" for the loss. O'Neill reportedly said, "[Y]ou're right, we goofed, the trade was cancelled four hours beforehand." But later O'Neill changed his mind and told Erickson that he would have to split his losses with Lashco. Transcript at 22–23. Erickson saw no reason why he should have to pay for what he believed was Lashco's error, and thus he

filed a statement of claim in arbitration before the CBOE on November 13, 1987.

Lashco filed an answer to Erickson's claim on January 15, 1988. Three days later Lashco filed a "Request for Information," purportedly under Rule 18.22 of the CBOE Rules. In this Request, Lashco asked Erickson to provide Lashco with his daily clearing sheets for October 19–22, 1987, as well as any other documents supporting his claim. Erickson did not respond to this request until the arbitration hearing, which was held on March 23, 1988. At that hearing, Erickson produced his clearing sheets only for October 20 and 21, and so Lashco moved to dismiss Erickson's claim for failure to comply fully with discovery. The arbitrators asked Lashco's attorney, James J. Moylan, why the sheets for October 19 and 22 were relevant, when the disputed trades took place on October 20 and 21. Moylan conceded that Erickson's activities on October 22 were irrelevant, but contended that evidence of Erickson's position on October 19 would shed light on why Erickson had wanted to sell the shares short in the first place. The arbitrators could not comprehend how Erickson's motive bore on the issue of whether Lashco negligently cancelled Erickson's order or failed to settle his claim, but they told Moylan that "[i]f you feel you're disadvantaged at any point because of [the lack of a market-maker sheet for October 19], we'll take that into consideration." Transcript at 8–9.

Moylan never raised the issue again, nor did he indicate at any time during the hearing that the lack of information about Erickson's position on October 19 disadvantaged Lashco. Instead, the arbitrators heard from Erickson, Samuelson, O'Neill, and Lance Shields, the president of Lashco. It appears from the course of testimony that the central issue was whether Erickson had informed Lashco of the mistaken sale before or after he took steps to cover his losses. Erickson contended that he had spoken to Ramirez and O'Neill about the mistake before or shortly after the opening of the market, and then covered. O'Neill testified that he did not learn of the mistake until sometime between 10:30 a.m. and 11:30 a.m.—after Erickson covered. Transcript at 58–59. The issue of whether Erickson notified Lashco prior to covering the sale was crucial because Lashco contended that, since it had processed Erickson's cancellation order, it could have forced the NYSE to make good on it, thereby obviating the need for Erickson or Lashco to cover.

The day after hearing the testimony of these witnesses, the arbitrators awarded Erickson $5,090.74 plus interest and costs. Lashco then discovered a tape that allegedly indicates that Erickson had not told Lashco of its error at the time he placed his covering bid, contrary to some of Erickson's testimony. Lashco moved to reopen the proceedings based on this "new and material evidence" on April 8, 1988. The arbitrators denied Lashco's motion on June 8, 1988. Lashco applied to this court for an order to vacate the award on July 28, 1988.

Lashco claims that the arbitrators erred in this matter by denying Lashco's discovery request, refusing to impose sanctions on Erickson for not complying with the request, misapplying the law of negligence, and refusing to consider the new evidence after the close of the hearing. In order for this court to vacate the award, however, Lashco must demonstrate that these errors fall within one of the five categories set forth in 9 U.S.C. § 10. That provision allows a district court to vacate an award:

(a) Where the award was procured by corruption, fraud, or undue means.

(b) Where there was evident partiality or corruption in the arbitrators, or either of them.

(c) Where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced.

(d) Where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite

award upon the subject matter submitted was not made.

(e) Where an award is vacated and the time within which the agreement required the award to be made has not expired the court may, in its discretion, direct a rehearing by the arbitrators.

■ Lashco does not argue that the arbitrators' errors fall under subsections (a), (d), or (e). In its memorandum in support of its petition, Lashco suggests that all of these errors amount to "partiality" towards Erickson, but this is not enough to state a ground for vacation under subsection (b). That provision requires "evident partiality or corruption," which the Seventh Circuit has defined as "actual bias" or circumstances that are "powerfully suggestive of bias...." *Merit Ins. v. Leatherby Ins. Co.*, 714 F.2d 673, 680–81 (7th Cir. 1983), mandate modified, 728 F.2d 943 (7th Cir.1984). See also *Commonwealth Corp. v. Casualty Co.*, 393 U.S. 145, 146, 89 S.Ct. 337, 338, 21 L.Ed.2d 301 (1968) (evident partiality where arbitrator has "repeated and significant" business dealings with one of the parties).

Lashco's attacks will have to fall within the sweep of subsection (c) if this court is to have the power to vacate the arbitrators' award. Specifically, Lashco will have to demonstrate that one of the errors amounted to "misbehavior" by which its rights were prejudiced, or it must show that its newly discovered evidence was pertinent and material to the controversy. If the errors fail to meet these standards, then the award is valid and Erickson is entitled to its confirmation.

The court will take Lashco's discovery objections first. Lashco attempted to obtain information from Erickson under CBOE Rule 18.22, which states:

(a) The arbitrators and any counsel of record to the proceeding shall have the power of the subpoena process as provided by law. However, the parties shall produce witnesses and present proofs to the fullest extent possible without resort to the issuance of the subpoena process.

(b) Prior to the first hearing session, the parties shall cooperate in the voluntary exchange of such documents and information as will serve to expedite the arbitration. If the parties agree, they may also submit additional documents to the Director of Arbitration for forwarding to the arbitrators.

■ Rule 18.22 requires the parties to cooperate in voluntary discovery that expedites the arbitration, but it says nothing about the arbitrators' duty to enforce discovery—that is, make voluntary discovery involuntary. An arbitrator's powers over discovery are contained in Rule 18.4(g), which authorizes the arbitrator "to require the submission of ... documentary evidence as he, *in his sole discretion,* deems advisable." (emphasis added) Since Congress enacted the Federal Arbitration Act "to place arbitration agreements 'upon the same footing as other contracts,' " *Scherk v. Alberto–Culver Co.*, 417 U.S. 506, 511, 94 S.Ct. 2449, 2453, 41 L.Ed.2d 270 (1974), quoting H.R.Rep. No. 96, 68th Cong. 1st Sess. 1–2 (1924), and as Rule 18.4(g) is a part of the parties' agreement to arbitrate, this court is reluctant to ignore Rule 18.-4(g) and not support the arbitrators in their exercise of discretion.

Nevertheless, if § 10(c) of the Act imposes limits on the arbitrator's discretion under CBOE Rule 18.4(g), this court finds no misconduct or prejudice to Lashco in the arbitrators' refusal to enforce Lashco's discovery request. Lashco admitted at the hearing that its request for information from October 22 was irrelevant, so Lashco cannot be heard to claim prejudice now. As for the evidence of Erickson's trading activities on October 19, the arbitrators gave Lashco the right to interrupt the hearing anytime that Lashco felt it was harmed from not having this information. Lashco never exercised this right, so whatever prejudice it suffered is its own fault. Similarly, Erickson's late submission of his market-maker sheets from October 20–21 may have prejudiced Lashco's defense, but Lashco never asked the arbitrators to delay the proceedings so that it could study the sheets. The focus of subsection (c) is arbitrator misconduct. If a party never raises a timely objection to the arbitrator, the

arbitrator never gets the opportunity to "conduct" himself one way or the other. Lashco never raised any of its objections in a timely manner, and thus Lashco's present discovery objections are insufficient grounds for vacation.

Lashco next objects to the arbitrators' refusal to sanction Erickson for his failure to comply with the discovery request. Since the arbitrators rightly denied Lashco's discovery requests without prejudicing Lashco, their denial of Lashco's motion to dismiss Erickson's claim for failure to comply with discovery did not prejudice Lashco either. After the hearing Lashco suggested to the arbitrators that they acted improperly in denying a motion to make adverse inferences on the issues affected by Erickson's decision not to produce his market-maker sheets, but this court finds no such motion in the transcript of the hearing. The sanction that Lashco sought was dismissal of Erickson's claim, and the arbitrators did not act wrongfully in refusing to impose it.

■ Lashco's third objection is to the arbitrator's refusal to dismiss Erickson's complaint at the close of his case for failure to establish Lashco's negligence. At the end of Erickson's case, these facts were in evidence: Erickson placed an order to sell 3,000 shares of Champion stock with Lashco. Twenty minutes later Erickson cancelled the order. The next morning Erickson learned that the sale went through, 3½ hours after he cancelled it. When told of these facts before the opening of the market on October 21, Lashco denied responsibility, but later that morning Lashco's floor manager, O'Neill, admitted that Lashco had "goofed." In the interim, Erickson had covered his losses.

These facts were enough to let Erickson survive Lashco's motion for, in effect, a directed verdict. Samuelson had testified that a Lashco employee had admitted Lashco's negligence. Even if this admission had not been in evidence, the remaining evidence was sufficient for the arbitrators to infer Lashco's negligence under the doctrine of res ipsa loquitur. See W. Page Keeton et al., The Law of Torts §§ 39–40

(5th ed. 1984) (inference of negligence permissible where "(1) the event [is] of a kind which ordinarily does not occur in the absence of someone's negligence; (2) it [is] caused by an agency or instrumentality within the exclusive control of the defendant; (3) it [is] not ... due to any voluntary action or contribution on the part of the plaintiff;" inference allows plaintiff to survive motion for directed verdict).

Lashco then proceeded at the hearing to present its defense, in which it submitted that the NYSE was at fault for not honoring Erickson's cancellation order and that Erickson was at fault for covering prematurely. The arbitrators quizzed both sides extensively about the timing of Erickson's notice to Lashco, and apparently they determined that it was Lashco's fault that Erickson covered prematurely. While Lashco may dispute the arbitrators' conclusion on this issue, Lashco can point to no arbitrator misconduct that resulted in this conclusion. There was evidence favoring both sides on the issue, and the arbitrators were certainly within their power to prefer one story over the other.

Lashco submits that the covering issue was not apparent from the face of Erickson's complaint, and implies that it was prejudiced in its defense for not being aware of the issue prior to the hearing. Like many of Lashco's objections, this one fails for lack of prejudice. Lashco felt content during the hearing to let the arbitrators proceed on the issue of whether Erickson properly covered. Lashco never objected to the presentation of evidence on the issue, nor did it move to recess the proceedings. In fact, Lashco's attorney examined all of the witnesses thoroughly on the covering issue. This was the proper tactic, since (as will be examined below) the most important evidence as to when Erickson notified Lashco lay with the witnesses who were at the arbitration hearing.

■ This court thus concludes that the arbitrators did not commit prejudicial misconduct in applying the law of negligence to this case. Lashco is thus left with its last objection, that to the arbitrators' failure to reopen the hearing to consider the

taped evidence. Lashco submits that this evidence was pertinent since it directly contradicted Erickson's testimony that he told Lashco of its failure to cancel the order at the time he covered. Lashco further argues that the evidence was material, as the issue of the timing of Erickson's notice determined which party was liable for Erickson's losses on the covering transaction.

Lashco's argument on materiality is wrong. At several times during the hearing Erickson insisted that he notified Lashco prior to the opening of the markets, 9:00 a.m. He testified that after Ramirez and O'Neill brushed him off, he went to Samuelson, who urged him to cover. Erickson agreed, and phoned his covering bid to Lashco. In response to a question from one of the arbitrators, Erickson stated that he told Lashco a second time—at the time he placed his covering order—that Lashco had erred in cancelling his order.

The transcript of the tape contradicts Erickson's claim of the second notice to Lashco, but it does not contradict his testimony as to his in-person exchanges with Ramirez and O'Neill, prior to his even considering covering. The tape also fails to contradict Samuelson's statement that he saw Erickson approach the Lashco booth on the CBOE trading floor prior to the opening of the markets, presumably to report the cancellation error to Lashco. The tape thus presents evidence that is material to the issue of whether Erickson was telling the truth, but not as to whether he told Ramirez and O'Neill of the error prior to placing his covering bid. Since the evidence goes only to Erickson's credibility, the arbitrators' refusal to consider it is not grounds for vacation of their award. See *Shearson Hayden Stone, Inc. v. Liang*, 653 F.2d 310, 313 (7th Cir.1981) (failure to consider credibility evidence not grounds for vacation).

This court thus denies Lashco's application for an order vacating the CBOE's award. This court enters judgment in favor of David P. Erickson, confirming his award from the arbitrators of the CBOE dated March 24, 1988. This court directs Mr. Erickson to submit a statement of his costs to the court by January 16, 1989.