**CELTECH, INC., Appellant,**

v.

**Clifton K. BROUMAND, Appellee.**

No. 90-43.

District of Columbia Court of Appeals.

Submitted Dec. 6, 1990.

Decided Jan. 11, 1991.

Richard Henderson filed a brief for appellant.

Andrew P. Zimmer filed a brief for appellee.

Before FERREN and SCHWELB, Associate Judges, and MACK, Senior Judge.

SCHWELB, Associate Judge:

Celtech, Inc. appeals from an order of the trial court denying its motion to vacate an arbitration award in favor of Broumand, its former sales representative, and granting Broumand's motion to enforce it. The dispute arose out of the termination by Celtech of the Independent Sales Representation Agreement between the parties. Broumand claimed that he had been damaged in the amount of $39,000. Celtech

denied liability and asserted that Broumand owed it $9,800 for salary or commissions advanced to Broumand but allegedly not earned. The arbitrator awarded Broumand $15,000 on his claim and Celtech $3,000 on its counterclaim.

Celtech contended in the trial court, and continues to maintain on appeal, that there was "evident partiality" on the part of the arbitrator within the meaning of D.C.Code § 16–4311(a)(2) (1989).[1] Its only basis for this contention is that the arbitrator did not explain the reason for his award and that the award was contrary to the language of the agreement between the parties and wrong on the facts and the law. The trial judge held that Celtech had failed to demonstrate evident partiality. We agree.

■ Where, as here, the parties have agreed to resolve their disputes by arbitration, the judicial role is a limited one. To persuade a court to interfere with an arbitration award, a party must show corruption or "gross mistake;" an error of judgment will not do. *Mancuso v. L. Gillarde Co.*, 61 A.2d 677, 678–79 (D.C.1948). The applicable principles were articulated by the Supreme Court many years ago in *Burchnell v. Marsh*, 58 U.S. (17 How.) 344, 349, 15 L.Ed. 96 (1854):

Arbitrators are judges chosen by the parties to decide the matters submitted to them, finally and without appeal. As a mode of settling disputes, it should receive every encouragement from courts of equity. If the award is within the submission, and contains the honest decision of the arbitrators, after a full and fair hearing of the parties, a court of equity will not set it aside for error, either in law or fact. A contrary course would be a substitution of the judgment of the chancellor in place of the judges chosen by the parties, and would make an award the commencement, not the end, of litigation.

A century later, in *Bernhardt v. Polygraphic Co. of America, Inc.*, 350 U.S. 198, 203, 76 S.Ct. 273, 276, 100 L.Ed. 199 (1956), the Court elaborated as follows:

Arbitrators do not have the benefit of judicial instruction on the law; they need not give their reasons for their result; the record of their proceedings is not as complete as it is in a court trial; and judicial review of an award is more limited than judicial review of a trial.... Whether the arbitrators misconstrued a contract is not open to judicial review.

*See also Raytheon Co. v. Automated Business Systems, Inc.*, 882 F.2d 6, 8 (1st Cir.1989) (arbitrators need not explain their decisions); *I.S. Stavborg v. National Metal Converters, Inc.*, 500 F.2d 424, 432 (2d Cir.1974) (court will not disturb award even if it is based on an erroneous interpretation of a contract); *Andros Compania Maritima, S.A. v. Marc Rich & Co., A.G.*, 579 F.2d 691, 702–04 (2d Cir.1978).

In the so-called *Steelworkers Trilogy*,[2] the Supreme Court refined in some measure the principles articulated in its earlier cases. Courts may now inquire, *inter alia*, whether an arbitrator's decision was arbitrary or capricious. *See* 6 T. Kheel, Labor Law § 24.05[2] at 24–91 to 24–96 (1989). Nevertheless, the burden on a party seek-

---

1. This statute provides in pertinent part that
   (a) Upon application of a party, the Court shall vacate an award where:
   \* \* \* \* \* \*
   (2) There was evident partiality by an arbitrator appointed as a neutral or corruption in any of the arbitrators or misconduct prejudicing the rights of any party.
   The claim of "evident partiality" was the prime basis, if not the sole basis, proffered by Celtech in the trial court for vacating the award. It was the only claim which the trial judge understood to have been presented, and the only one on which he ruled. To the extent, if any, that Celtech intends its appellate brief to raise a different issue, namely, whether the

award should be vacated, regardless of any partiality on the part of the arbitrator, because it was allegedly contrary to record evidence, the point has arguably been waived. *D.D. v. M.T.*, 550 A.2d 37, 48 (D.C.1988). Even assuming that this issue has been preserved, however, Celtech's position is lacking in merit. See text, *infra* at 1259–1260.

2. *United Steelworkers v. American Manufacturing Co.*, 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); *United Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960).

ing to set aside the result of an arbitration proceeding remains a formidable one. An award may be vacated or modified only on grounds clearly specified by statute. *Stern v. Stern Co. of Washington, D.C.*, 91 U.S.App.D.C. 338, 200 F.2d 364 (1952). Celtech's appeal in the present case must therefore stand or fall on its contention that it has demonstrated "evident partiality" on the part of the arbitrator.

■ "The burden of proving facts which would establish a reasonable impression of partiality rests squarely on the party challenging the award." *Sheet Metal Workers Int'l Ass'n, Local Union No. 420 v. Kinney Air Conditioning Co.*, 756 F.2d 742, 745 (9th Cir.1985). That party must establish "specific facts which indicate improper motives" on the part of the arbitrator. *Id.* at 746. As one court has noted, arbitrators are usually knowledgeable individuals in a given field and have interests which overlap with the issues which they are considering as arbitrators. *Florasynth, Inc. v. Pickholz*, 750 F.2d 171, 173 (2d Cir.1984). Accordingly, even an appearance of bias that might disqualify a judge will not disqualify an arbitrator. *Id.* at 173–74; *Sheet Metal Workers, supra,* 756 F.2d at 746.

■ Evident partiality exists where an arbitrator has had close financial relations for many years with a party to the arbitration. *Commonwealth Coatings Corp. v. Continental Casualty Co.*, 393 U.S. 145, 146, 89 S.Ct. 337, 338, 21 L.Ed.2d 301 (1968) (plurality opinion). The same has been found to be true where the arbitrator was the son of an officer of one of the parties. *Morelite Construction Corp. v. New York City District Council Carpenters Benefit Funds*, 748 F.2d 79, 84 (2d Cir.1984); *see also Florasynth, supra,* 750 F.2d at 174 (dictum). Celtech having made no attempt

to show the existence of circumstances of this kind, however, its claim of evident partiality must fail.

In general, "the 'evident partiality or corruption' language of 9 U.S.C. § 10(b) [3] is confined to situations where the arbitrator has had dealings or relationships with one of the parties that might cause him to be biased." *Reichman v. Creative Real Estate Consultants, Inc.*, 476 F.Supp. 1276, 1284 (S.D.N.Y.1979). The courts have repeatedly rejected claims by parties dissatisfied with the results of arbitration proceedings that certain rulings can only be explained by the arbitrators' evident partiality. *Lashco, Inc. v. Erickson*, 700 F.Supp. 960, 963 (N.D.Ill.1988); *Konkar Maritime Enterprises, S.A. v. Compagnie Belge D'Affretement*, 668 F.Supp. 267, 274–75 (S.D.N.Y.1987). As Judge Sirica concisely put it in *Fairchild & Co., Inc. v. Richmond, F. & P.R. Co.*, 516 F.Supp. 1305, 1313 (D.D.C.1981), "[t]he mere fact that arbitrators are persuaded by one party's arguments and choose to agree with them is not of itself sufficient to raise a question as to the evident partiality of the arbitrators." *See also Arlington Towers Land Corp. v. John McShain, Inc.*, 150 F.Supp. 904, 927 (D.D.C.1957) (Tamm, J.) (even where court would have decided issue differently, arbitrator's award will not be set aside in the absence of some affirmative showing of prejudice or bias). To permit "evident partiality" to be inferred from the arbitrator's decision on the merits would undercut the restrictions on judicial review of arbitration proceedings for error of fact or law.[4]

Courts should seldom, if ever, say never. "[An arbitrator] does not sit to dispense his own brand of industrial justice," *United States Steelworkers v. Enterprise Wheel*

---

3. This provision of the federal arbitration statute is identical for present purposes to D.C.Code § 16–4311(a)(2), quoted in n. 1, *supra.*

4. Judges, who are subject to more rigorous requirements in this area than arbitrators are, *see Florasynth, supra,* 750 F.2d at 173–74, are nevertheless subject to disqualification only for personal, not judicial, bias. *In re Bell*, 373 A.2d 232, 233–34 (D.C.1977). The personal bias "must stem from an extrajudicial source and

result in an opinion on the merits on some basis other than what the judge learned from his participation in the case." *Id.* at 233 (quoting *United States v. Grinnell Corp.*, 384 U.S. 563, 583, 86 S.Ct. 1698, 1710, 16 L.Ed.2d 778 (1966)). There is no evidence whatever in the present case that the arbitrator's decision was influenced by anything he learned outside the arbitration proceeding.

*& Car Corp.*, 363 U.S. 593, 597, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424 (1960). If an arbitrator's words were to manifest infidelity to the law and a deliberate disregard of it, this might conceivably amount to "evident partiality" within the meaning of the statute. *See San Martine Compania De Navegacion, S.A. v. Saguenay Terminals, Ltd.*, 293 F.2d 796, 801 (9th Cir.1961). But such an inference of bias could be drawn from an alleged departure from correct legal principles, if at all, only in extreme and unusual circumstances. Celtech has made no such showing here.[5]

On the contrary, it is undisputed that the arbitrator had before him the agreement of the parties and surrounding documentation and heard evidence from both sides. Even if we assume that Celtech is correct in its principal contention on the merits, namely, that it had the authority under its agreement with Broumand to terminate his services without cause, we would be in no position to hold on the record before us that the arbitrator made a gross error. As Broumand points out in its brief, the agreement between the parties provides for a retainer of $1500 per month, which might well have served as the basis for the award to him. There was also apparently conflicting testimony regarding commissions claimed by Broumand to be due and owing. The oral testimony presented by the parties to the arbitrator is not before us,[6] and we simply have no basis for concluding that the arbitrator's decision was predicated on an error so egregious that bias, corruption, infidelity to the law, or even irrationality, could reasonably be inferred.

Accordingly, the judgment of the trial court is hereby

*Affirmed.*[7]

---

5. Celtech cites several decisions for the proposition that partiality or bias may be inferred from erroneous arbitral decisions. In the only one in which the point was directly addressed—*In re Arbitration Proceedings*, 9 N.Y.2d 873, 175 N.E.2d 825, 216 N.Y.S.2d 694 (1961)—this inference was drawn solely by the dissenting judge. All of the other members of the two appellate courts which considered the case voted to sustain the award.

6. Celtech was, of course, obligated to present us with a record sufficient to enable us to assess its contentions. *Cobb v. Standard Drug Co.*, 453 A.2d 110, 111 (D.C.1982).

7. Celtech also contends that the trial judge should not have awarded Broumand pre-judgment interest on his award running from the date of the arbitrator's decision. Arguably, the contested award of interest was mandated, since the arbitration award was in a liquidated amount. *See* D.C.Code § 15–108 (1989). In any event, even assuming that the determination whether to award such interest was discretionary, the judge's decision was appropriate. As we recently observed in *Riggs National Bank v. District of Columbia*, 581 A.2d 1229, 1253 (D.C.1990),

> [w]here the debtor should have paid what he owed but did not do so, a denial of pre-judgment interest would deny full compensation to the creditor while allowing the recalcitrant party to take advantage of his own wrong and become the richer for it. *Cf. Glus v. Brooklyn E. Dist. Terminal*, 359 U.S. 231, 232–33 [79 S.Ct. 760, 762–63, 3 L.Ed.2d 770] (1959).