John UMANA, Appellant,

v.

SWIDLER & BERLIN, CHARTERED,
et al., Appellees.

No. 97–CV–694.

District of Columbia Court of Appeals.

Argued June 3, 1998.
Decided Feb. 17, 2000.

Clark R. Silcox, with whom Cheryl Browning, Washington, DC, was on the brief, for appellant.

Scott L. Nelson, with whom John P. Elwood, Washington, DC, was on the brief, for appellees.

Before FARRELL, RUIZ and REID, Associate Judges.

RUIZ, Associate Judge:

This case is before the court for a second time. In his first appeal, John Umana asked the court to vacate an arbitral award in favor of Swidler & Berlin that rejected Umana's principal claim that he was an equity partner in the firm. That appeal

was dismissed as having been taken from a non-final order because Umana's claims against eleven individual members of the firm, which were part of his original complaint, were still pending. *See Umana v. Swidler & Berlin,* 669 A.2d 717 (D.C.1995). In this appeal, Umana argues that the trial court erred in denying his motion for a new trial on the question of the neutral arbitrator's bias, following his discovery of new evidence that the arbitrator failed to disclose a significant relationship between the arbitrator and one of the members of the firm (one of the named individual defendants in the complaint filed in Superior Court) who acted as Swidler & Berlin's representative and testified in the arbitration proceedings. Umana also contends that the trial court erred in dismissing his claims against the individual members of the firm and in ruling that all of his claims were subject to arbitration. With respect to the claim against Swidler & Berlin decided by the arbitrators against Umana, we agree that the claim was subject to the arbitration agreement and conclude that the arbitrator's nondisclosure did not concern a close or financial relationship of the type that would warrant vacatur of the arbitral award. Thus, we affirm the trial court's denial of the motion for new trial and confirmation of the arbitral award. We also affirm the trial court's ruling dismissing the case against the individual defendants for plaintiff's failure to prosecute and, as a result, we need not reach the issue of the arbitrability of Umana's claims against them.

## I. Background

As the procedural history of the case is relevant to one of the issues on appeal, we set it out in some detail. In 1989 Umana concurrently filed a complaint in Superior Court against Swidler & Berlin and eleven of its members and a demand for arbitration before the American Arbitration Association (AAA) against Swidler & Berlin only. In 1990, Umana obtained a stay of the arbitration and pursued the litigation. The defendants moved to compel arbitration of all the claims under the arbitration agreement in the Employment Contract between Umana and Swidler & Berlin.[1] After the trial court (Judge Cushenberry) ordered that "all of Mr. Umana's claims against all of the defendants" were subject to the arbitration agreement, the litigation was stayed. Umana then proceeded with the AAA arbitration he had demanded against Swidler & Berlin, but did not amend it to include the individual members of the firm.

Pursuant to the arbitration agreement, each party appointed one arbitrator, and the two appointed a neutral third arbitrator.[2] At the conclusion of discovery and after a three-day evidentiary hearing, two of the arbitrators, the one appointed by Swidler & Berlin and the neutral third arbitrator, issued an award on May 15, 1991, rejecting Umana's claim because he "was not a member with tenure of Swidler & Berlin, Chartered," giving three reasons for their conclusion.[3] The arbitrators also

---

1. The Employment Contract provides in relevant part:

 10. *Arbitration. Any dispute with regard to any aspect of the relationship between the parties pursuant to this Agreement that cannot be settled by mutual agreement shall be determined by a majority of three arbitrators. Each party shall designate one arbitrator, and the two so selected shall select a third. Any such arbitration proceeding shall be conducted in accordance with the rules of the American Arbitration Association.*

2. Umana appointed Jules Bernstein; Swidler & Berlin appointed James Robertson; these

two arbitrators selected Robert Pitofsky as the third neutral arbitrator. Pitofsky, who disclosed that he was of counsel to Arnold & Porter and a professor at Georgetown University Law Center, was not opposed by either party. Umana had been an associate at Arnold & Porter immediately prior to his joining Swidler & Berlin, overlapping with Pitofsky's tenure at A & P.

3. The two arbitrators explained that:

 a) [Swidler & Berlin] never took actions necessary to make [Umana] a partner with tenure and [Umana] had no reason to believe otherwise

awarded $50,000 to Swidler & Berlin on a counterclaim, which was later modified by a $4,000 setoff in favor of Umana for interest on a pension account which should have been paid to him upon his departure from the firm. The arbitrator appointed by Umana filed a dissenting statement from the majority's decision that Umana was not a tenured partner of the firm and that he was liable on Swidler & Berlin's counterclaim.

Umana petitioned the court to vacate the arbitral award, arguing *inter alia* that the matter was not arbitrable and that the third and neutral arbitrator, Robert Pitofsky, was biased because of his relationship with Arnold & Porter. Swidler & Berlin opposed Umana's motion and requested that the arbitral award be confirmed. The trial court (Judge Graae) confirmed the award on June 15, 1992. In rejecting Umana's petition, the trial court agreed with Judge Cushenberry's ruling that the claim was arbitrable and ruled that Umana had waived his claim of Pitofsky's bias based on his relationship with Arnold & Porter because he had not objected to Pitofsky's appointment at the time when Pitofsky disclosed his relationship with the firm. The trial court further ruled that, in any event, it found "nothing in the record that comes even close to demonstrating partiality, much less 'evident partiality,' on Mr. Pitofsky's part."

Umana then filed his first appeal, arguing that his claims were not subject to arbitration and that the award should be set aside because of Pitofsky's partiality. While the appeal was pending in this court, Umana sought to supplement the record before this court and also filed a Superior Court Civil Rule 60(b) motion with the trial court based on newly discovered evidence of Pitofsky's bias.[4] This court denied the motion to supplement, but permitted the Rule 60(b) motion under *Smith v. Pollin*, 90 U.S.App.D.C. 178, 180, 194 F.2d 349, 350 (1952) ("when an appellant in a civil case wishes to make a motion for a new trial on the ground of newly discovered evidence while his appeal is still pending, the proper procedure is for him to file his motion in the trial court.")

In a June 16, 1995, order, the trial court denied Umana's Rule 60(b) motion for a new trial and refused the request to reopen the record for new discovery and admit new evidence. Quoting from *Health Servs. Management Corp. v. Hughes*, 975 F.2d 1253, 1264 (7th Cir.1992), Judge Graae concluded that Umana had failed to meet his burden that Pitofsky's alleged partiality was "direct, definite, and capable of demonstration, rather than remote, uncertain or speculative." In a footnote, the order stated that "there [did not] appear to be a dispute that Mr. Pitofsky's failure to make th[e] disclosure [concerning Ferguson] violated AAA Rules and his oath as an arbitrator."

b) If [Umana] at any time had become a partner with tenure at Swidler & Berlin, his transfer of stock back to the firm for consideration extinguished his rights as a partner with tenure; and
c) If [Umana] were a partner with tenure and did not extinguish his rights by the transfer of stock back to the firm, [Umana] is barred from asserting his claims by the doctrine of laches because he failed to take action in a timely manner to protest the firm's decisions with respect to his status.

4. The evidence came from the deposition of John Ferguson taken in the course of litigation initiated by the AAA against Umana to recover his share of the arbitrator's fees. Specifically, Umana proffered evidence from the deposition that Pitofsky's service at the Federal Trade Commission during the early 1970's had coincided with the two year service at the FTC of John Ferguson, a member of Swidler & Berlin who was a witness at the arbitration hearing and acted as the firm's representative at the hearing. Umana also claimed that Ferguson had acted as Pitofsky's attorney on an important matter while Ferguson was at the FTC and that, subsequent to his departure from the agency, Ferguson had appeared before the FTC at a time when Pitofsky was a commissioner, in a proceeding where the Commission had ruled in favor of Ferguson's client concerning a motion to disqualify counsel, who was a partner of Ferguson.

While the first appeal was still pending, the individual defendants moved in April 1995 to dismiss the claims against them for lack of prosecution through arbitration. The trial court (Judge Winfield) ruled that it lacked jurisdiction while Umana's appeal was pending before the Court of Appeals.

On December 19, 1995, we dismissed Umana's first appeal for lack of jurisdiction because the claims against the individual defendants were still pending. *See Umana*, 669 A.2d at 723–24. Shortly after the dismissal, Umana's counsel advised the individual defendants that they should ready themselves for trial in Superior Court. Some eight months later, Umana's new counsel (and counsel in this appeal) again advised of Umana's intention to proceed against the individual defendants in Superior Court. The individual defendants asserted that they adhered to their previous position, *i.e.*, that the claims were arbitrable and were subject to dismissal for lack of prosecution. Nothing further appears to have happened until March 5, 1997, when the individual defendants renewed their motion to dismiss the claims against them for failure to prosecute in accordance with Judge Cushenberry's 1990 order that the claims were subject to arbitration. Umana moved for a default judgment against the individual defendants in the Superior Court action, or, alternatively, for an order compelling them to submit to arbitration in thirty days. Noting that "[s]even years have passed since [Umana] was ordered to arbitrate all of his claims" and that he had "taken none of the procedural steps necessary to arbitrate his claims against the individual defendants," the trial court (Judge Weisberg) granted the motion dismissing the individual defendants and entered a final judgment in favor of Swidler & Berlin. It is from this final judgment against all of the defendants that Umana now appeals.

## II. Vacation of the Arbitral Award [5]

 In this appeal, Umana's principal argument is that the arbitral award should

5. In this appeal Umana incorporates the arguments from his first, dismissed appeal, that he did not agree to submit to arbitration all of his claims against the defendants. In his briefs in the first appeal, Umana argued that arbitration of his claim against Swidler & Berlin concerning his status as a partner (owner) of the firm was not "pursuant to" the Employment Agreement he signed with the firm some three months after they had agreed he would be a partner. See *supra*, note 1. Further, Umana claimed that arbitration of his claim against Swidler & Berlin is against public policy because the firm was motivated to act against him as a result of his contention that Ferguson's representation of a client violated the Rules of Professional Conduct. He also argued that his claim that individual members of Swidler & Berlin breached their fiduciary duties to him were separate from, and not included in, the matters that were the subject of the arbitration agreement between him and the firm. The defendants contend that Umana's failure to brief any of those arguments in this appeal violates District of Columbia Appellate Rule 28(a) and constitutes a waiver, citing *Brown v. United States*, 675 A.2d 953, 955 (D.C.1996) (declining to consider arguments in briefs filed by appellants in a different case which appellant attempted to incorporate by reference).

Even assuming that Umana's claims are preserved and properly before us, we agree with the trial court that the broad language of the arbitration clause in the Employment Agreement covers Umana's claim against Swidler & Berlin that he was wrongfully deprived of his partnership at the firm. *See Carter v. Cathedral Avenue Coop., Inc.*, 566 A.2d 716, 717 (D.C.1989) ("arbitration clauses should be broadly construed") (citing *AT & T Technologies, Inc. v. Communications Workers*, 475 U.S. 643, 650, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986)). Although Umana has alleged that it was his advertence to an ethical lapse that motivated his ouster from the firm's membership, there is no indication in the record that Umana pursued the matter by bringing it to Bar Counsel. In any event, the caution surrounding submission to arbitration of matters involving public policy, such as antitrust violations, does not preclude arbitrators from considering the impact of an issue affected with public policy concerns in the context of a matter that clearly is subject to arbitration. *See, e.g., Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985) (holding federal antitrust laws do not prohibit parties from agreeing to arbitrate antitrust claims arising out of *international commercial transactions* and questioning the underly-

be set aside due to the bias of the neutral third arbitrator, Robert Pitofsky. He argues that the trial court's statement in denying the Rule 60(b) motion for a new trial, that Pitofsky's failure to disclose his prior relationship with Ferguson violated both the AAA Rules requiring disclosure and the oath he took as an arbitrator, had two legal effects: 1) it demonstrated Pitofsky's "evident partiality" sufficient for vacation of the award under D.C.Code § 16–4311(a)(2), and 2) it rendered the award ineffective as a matter of contract law because the agreement required that the arbitration be "in accordance with" the AAA Rules which the trial court found Pitofsky to have violated. Umana further argues that Pitofsky's actions in conducting the arbitration, particularly in his rulings concerning discovery, prove that he was biased in favor of the defendants. Umana places most of his reliance on language from *Commonwealth Coatings Corp. v. Continental Cas. Co.*, 393 U.S. 145, 89 S.Ct. 337, 21 L.Ed.2d 301 (1968), that an arbitrator is required to "disclose to the parties any dealings that might create an impression of possible bias," *id.* at 149, 89 S.Ct. 337, and that "failure of an

arbitrator to volunteer information about business dealings with one party will, prima facie, support a claim of partiality or bias." *Id.* at 154, 89 S.Ct. 337 (Fortas, J., dissenting). We disagree with these contentions.[6]

### Evident Partiality

 Under the District of Columbia Uniform Arbitration Act, *see* D.C.Code §§ 16–4301 to –4319 (1997) (DCUAA), judicial review of arbitral awards is extremely limited. We do not have authority to set aside an arbitral award based on our review of the merits of the arbitrators' decision. Rather, the statute permits vacation of an arbitral award for only certain limited reasons. *See* D.C.Code § 16–4311. Even were the court to set aside an arbitral award for a statutory reason (other than the absence of an agreement to arbitrate), it may not then decide the merits of the controversy. *See* D.C.Code § 16–4311(c). The remedy is to order a new arbitration.[7] *See id.* The party applying to the court for vacation of an arbitral award bears a "formidable" burden, *Celtech, Inc. v. Broumand*, 584 A.2d 1257, 1258–59 (D.C.1991), and, if the ground

---

ing theory that public interest in enforcement of antitrust laws makes antitrust claims inappropriate for arbitration); *Rodriguez de Quijas v. Shearson/ American Express, Inc.*, 490 U.S. 477, 109 S.Ct. 1917, 104 L.Ed.2d 526 (1989) (overruling an earlier decision that an agreement to arbitrate under the Securities Act of 1933 is unenforceable); *Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987) (permitting arbitration of claims under the Securities Exchange Act of 1934 and the Racketeer Influenced and Corrupt Organizations Act). In light of our affirmance of the trial court's dismissal of the claims against individual members of the firm, see *infra*, we need not reach the substance of Umana's argument that the claims against them should have been litigated, not arbitrated, as they have been forfeited by Umana's failure to prosecute them.

6. Umana also argues that Pitofsky should be held to a more stringent standard applicable to judges because, in the AAA litigation against Umana to recover his share of the

arbitrators' fees, see *supra* note 4, the arbitrator claimed immunity in moving to quash a subpoena concerning his performance in this arbitration. Although we have never ruled on the issue, we see no immediate connection between the availability of immunity to an arbitrator and the applicable standard for judicial intervention to vacate an arbitral award. Moreover, even if judicial standards applied, it is likely that a judge would not be precluded from deciding a case in the circumstances presented here. *See Merit Ins. Co. v. Leatherby Ins. Co.*, 714 F.2d 673, 680 (7th Cir.1983) (citing *Chitimacha Tribe of Louisiana v. Harry L. Laws Co.*, 690 F.2d 1157, 1166 (5th Cir.1982)).

7. Umana's Rule 60(b) motion, the denial of which is on appeal, was for relief from the previously entered judgment affirming the arbitral award. We interpret the relief requested as for a new trial on the issue of the arbitrator's bias or for a new arbitration, at least as to those claims which Umana does not dispute were subject to the arbitration agreement.

pressed concerns the performance of the arbitrator, must show "specific facts which indicate improper motives on the part of the arbitrator." *Id.* at 1259 (quoting *Sheet Metal Workers Int'l Ass'n Local Union No. 420 v. Kinney Air Conditioning Co.,* 756 F.2d 742, 745 (9th Cir.1985)). Umana's showing does not meet that standard.

First, even assuming that Pitofsky should have disclosed his relationship with Ferguson under the AAA Rules, a contention we see no reason to dispute,[8] his nondisclosure does not automatically translate to "evident partiality" warranting reversal under the statute. The relevant inquiry concerns not only the fact of the nondisclosure, but the nature of the relationship between Pitofsky and Ferguson. In this regard, we agree with the trial court's conclusion that the professional relationship that was created between them beginning during the two year period that both served within different bureaus of the FTC (some twenty years before the arbitration in question), and appears to have continued on a sporadic basis thereafter, is not the kind that threatens bias justifying vacation of the arbitral award.[9] *See Cellu-*

---

8. Swidler & Berlin argues that Pitofsky was under no obligation to disclose a matter of public record, and that Umana had a duty under the AAA Rules to investigate known facts about the arbitrator for possible disqualification. For this reason, Swidler & Berlin also argues that the evidence presented by Umana in his Rule 60(b) motion was not "newly discovered." Although we do not decide the issue, we are loathe to impose on a party a duty to investigate, rather than on the arbitrator, the duty to make full disclosure. "If arbitrators err on the side of disclosure, as they should, it will not be difficult for courts to identify those undisclosed relationships which are too insubstantial to warrant vacating an award." *Commonwealth Coatings,* 393 U.S. at 152, 89 S.Ct. 337 (White, J., concurring).

9. The trial court stated:

 The court has read all 286 pages of Mr. Ferguson's deposition and finds little or no evidence for the relationship plaintiff claims. Indeed, it is evident that plaintiff has tried to place a sinister and conspiratorial gloss on neutral or innocent events.

 The record supports the trial court's conclusion. Ferguson testified at a deposition in the AAA litigation, see *supra* note 4, concerning his relationship with Pitofsky as follows:

 *Evidence of a Ferguson–Pitofsky Relationship in 1970–72*

 Soon after Ferguson joined the FTC in "later spring or early summer of 1970" as assistant to the director of the Bureau of Competition, Pitofsky began to work at the FTC in late fall of 1970 as head of the Bureau of Consumer Protection. During the deposition counsel for Umana insistently queried Ferguson about whether he and Pitofsky might have been on a first-name basis during that time. Ferguson testified as follows:

 we had virtually nothing to do with each other during the time that I was in the Bureau. So our paths crossed very infrequently. He was a Bureau director and, therefore, the senior person. I certainly would have known him. Whether he would have known me or been one of the people who he regarded as memorable at that time. I can't say.

 After Ferguson became assistant general counsel of the FTC in the spring of 1971, on occasion Ferguson and Pitofsky were present at the same weekly FTC meetings. Ferguson drafted the FTC appellate brief in litigation concerning the FTC's "octane rule" for the Bureau of Consumer Protection, and submitted the penultimate draft of that brief to Pitofsky and at least three other FTC officials for comment. A small group of FTC officials including Ferguson and Pitofsky had a brief, informal discussion about the brief. Ferguson left the FTC in the summer of 1972, and the appeal was argued by another lawyer. Ferguson and Pitofsky also both worked on two other FTC projects (referred to as "Kid-Vid" and "cereal"), in "very different" roles. Ferguson acknowledged writing "very few" memos to the Bureau of Consumer Protection, conceivably as many as 25.

 *Evidence of a Ferguson–Pitofsky Relationship around 1980*

 After he left the FTC, Ferguson was lead counsel for the defendants in the Fruehauf/Kelsey–Hayes merger case both before the FTC and on appeal to the Second Circuit. Pitofsky was named an FTC commissioner some time after this case was argued before the FTC. Ferguson was also lead counsel on the Brunswick case, which was never argued orally before the FTC, and was later affirmed by the Eighth Circuit. Ferguson stated that he had no memory of whether or not Pitofsky was on the Commission at the time of the *Brunswick* decision, but in fact, Pitofsky authored the FTC opinion. Pitofsky was also listed as a commissioner on an order of the

*lar Radio Corp. v. OKI Am. Inc.*, 664 A.2d 357, 360–61 & n. 5 (D.C.1995) (citing *Celtech*, 584 A.2d at 1259) (to warrant vacation of an arbitral award, "the bias must be due to some financial interest or other loyalty owed to one side of the dispute").

In *Merit Ins.*, a case with facts highly analogous to those of this case, Judge Posner stated that:

> the test in this case is not whether the relationship was trivial; it is whether, having due regard for the different expectations regarding impartiality that parties bring to arbitration than to litigation, the relationship between Clifford [the arbitrator] and Stern [party to the arbitration] was so intimate—personally, socially, professionally, or financially—as to cast serious doubt on Clifford's impartiality. Although Stern had been Clifford's supervisor for two years and was a key witness in an arbitration where the stakes to the party of which he was the president and principal shareholder were big, their relationship had ended 14 years before, Clifford had no possible financial stake in the outcome of the arbitration, and his relationship with Stern during their period together at Cosmopolitan had been distant and impersonal. The fact that they had never socialized, either while working for the same company or afterward (though both were practicing law in Chicago all this time), indicates a lack of intimacy.

714 F.2d at 680.

Judge Posner noted that *Commonwealth Coatings* "provides little guidance because of the inability of a majority of Justices to agree on anything but the re-

sult," *id.* at 681, and after reviewing other courts' applications of that case, determined that

> [a]lthough it is difficult to extract from the cases more than a mood, the mood is one of reluctance to set aside arbitration awards for failure of the arbitrator to disclose a relationship with a party.

*Merit Ins.*, 714 F.2d at 682.

Judge Posner concluded,

> [t]o uphold the district court's vacation of the arbitration award in the absence of evidence of actual or probable partiality or corruption would open a new and, we fear, an interminable chapter in the efforts of people who have chosen arbitration and been disappointed in their choice to get the courts—to which they could have turned in the first instance for resolution of their disputes—to undo the results of their preferred method of dispute resolution.

*Id.* at 683.

■ Our jurisprudence similarly follows a narrow interpretation of the rule in *Commonwealth Coatings*. Although this is the first case in which we have considered nondisclosure of a prior collaborative relationship between an arbitrator and a participant in the arbitration, our analyses to date have focused on evidence of concrete, current or close links. *See Cellular Radio*, 664 A.2d at 360–61 (in case where arbitrator failed to disclose that he and counsel representing a party had been adversaries in two previous unrelated cases, nondisclosure of relationship did not warrant vacatur because the bias asserted "must be due to some financial interest or other loyalty owed to one side of the dispute"); *Celtech*, 584 A.2d at 1259 (in case where arbitra-

FTC denying a motion to disqualify counsel in that case. The motion concerned another former FTC official working at Ferguson's firm, not Ferguson himself.
*Evidence of a Ferguson–Pitofsky Relationship at Firm Parties*
When Ferguson was asked which government officials would have been invited to the firm's party following the spring antitrust Bar Association meeting, his response was:

a pretty inclusive list. You invite most of the ... [Department of Justice Antitrust Division and FTC officials] that are listed in the telephone directory.... The positions, not the people, but the positions, and then we would often include people less senior in position in the Commission and you include commissioners and their assistants. It was a pretty comprehensive list of people.

tor's impartiality was challenged for failure to explain basis for award, vacatur unwarranted where no attempt was made to show "close financial relations for many years" or a close personal relationship). In this case, Umana does not assert that Pitofsky had a financial interest in the arbitration or any of the parties to it.[10] He certainly has attempted, however, to present a case that Pitofsky was partial to Ferguson—and by implication to Swidler & Berlin—as a result of a camaraderie that was engendered during the two years they both served at the FTC. Absent more specific evidence of a close relationship between the arbitrator and an interested participant, it is difficult to imagine that the parties' expectations of impartiality were seriously undermined by such a common occurrence in the legal circles in the District of Columbia where the parties, their counsel[11] and the arbitrators practice. *See Merit Ins. Co.*, 714 F.2d at 680.

■ Umana also claims that Pitofsky's conduct of the arbitration shows that he was biased in favor of the defendants. Specifically, he points out that the arbitrator 1) permitted issuance of subpoenas requested by the defendants for performance evaluations of Umana while he was at Arnold & Porter, the law firm with which the arbitrator was affiliated at the time of the arbitration and in which Umana had been an associate before joining Swidler & Berlin;[12] 2) permitted, over objection, that Umana be cross-examined concerning his "portable business," the Arnold & Porter clients that did (or did not) follow him to

Swidler & Berlin; 3) denied Umana's request for discovery of certain bank documents he asserted showed his status as an equity partner of Swidler & Berlin, and 4) failed to decide Umana's claim that Swidler & Berlin wrongfully terminated him in violation of public policy when he brought to the partnership's attention that Ferguson's representation of a client was in conflict with the firm's duty to the class action clients Umana represented while at Swidler & Berlin. Appellees deny the factual underpinnings of the first and last of Umana's contentions.

■ We do not generally infer partiality from the arbitrator's discovery rulings. *See Cellular Radio Corp.*, 664 A.2d at 363. An arbitrator's substantive conduct during the proceedings may be used to show bias only in those "extreme and unusual circumstances" where the arbitrator can fairly be said to "manifest infidelity to the law and a deliberate disregard of it." *Celtech*, 584 A.2d at 1260. The rulings (or failure to rule) that Umana claims evidence the arbitrator's partiality cannot be so characterized.

First, a review of the record reveals that the issue of Umana's performance at his prior firm (Arnold & Porter) and at Swidler & Berlin was relevant to the issue of the terms of his partnership status at Swidler & Berlin. Second, Umana's claim that the arbitrator's bias was demonstrated in his discovery rulings is not supported by the record. After Swidler & Berlin produced certain documents in answer to Umana's discovery request, and Umana

10. Umana argues that as of counsel to Arnold & Porter, Pitofsky had a financial interest in the issue of the portable business Umana took with him when he left Arnold & Porter to join Swidler & Berlin. At that point, Umana asserts, Pitofsky had an ethical obligation to recuse from the arbitration proceeding. Umana can be deemed to have waived the objection as he did not then request that Pitofsky step aside as the "neutral" arbitrator. *See Cellular Radio Corp.*, 664 A.2d at 359 n. 3. Umana was well aware that Pitofsky had a relationship with Arnold & Porter as Umana's association with the firm overlapped with Pi-

tofsky's. In any event, Pitofsky had disclosed his relationship with Arnold & Porter.

11. Swidler & Berlin was represented by Jamie Gorelick; Jacob Stein represented Umana.

12. Umana asserts that Arnold & Porter responded to the subpoena even before it was issued, apparently suggesting that the arbitrator informally communicated the discovery request to his firm or exerted pressure over his firm to promptly comply with the subpoena.

complained they were not responsive, the arbitrator denied Umana's request to compel further production of documents based on Swidler & Berlin's objection on grounds of vagueness and overbreadth. Umana argues that, as a result, Swidler & Berlin withheld crucial documents—a note and continuing guarantee to Sovran Bank he had signed—that demonstrated his partnership status in the firm.[13] When Umana obtained the documents directly from the bank subsequent to the arbitration hearing they were admitted into evidence in the arbitration, but the arbitrators did not permit reopening of the hearing for further cross-examination of Swidler & Berlin representatives based on the documents.

 Third, with respect to the claim that Pitofsky failed to rule on Umana's counterclaim for wrongful termination due to Pitofsky's presumed reluctance to touch on Ferguson's alleged conflict of interest, we note that the arbitrators' award purported to decide the matter in its entirety, stating that it was "in settlement of all claims submitted in this arbitration." Although the arbitral award must be in writing, see D.C.Code § 16-4308(a), the arbitrators' failure to explicate the award is not a basis to show partiality as arbitrators are not required to set out the reasons for the award. See Celtech, 584 A.2d at 1257. Were Umana's interest in ascertaining that his claim of wrongful termination was not overlooked—for whatever reason—he would be expected to bring the apparent oversight before the arbitrators or the trial court to compel decision on the matter. It will not do, however, to save an objection that could have been asserted during the arbitration and use it later as a basis to set aside the arbitral award asserting the arbitrators' evident partiality. See Cellular Radio Corp., 664 A.2d at 359 n. 3.[14]

### Breach of Contract

 Umana's second contention is that Pitofsky's failure to make a disclosure required by the AAA Rules as a matter of law invalidated the award because the arbitration agreement required that "any such arbitration proceeding shall be con-

---

**13.** Surprisingly, it appears that Umana, who had signed the bank documents he claims Swidler & Berlin improperly withheld, never identified those documents in his request to the firm for production of documents. As the trial court noted when it denied Umana's first request to set aside the arbitral award due to the arbitrator's partiality, Umana knew of the existence of the documents because he had signed them and was able to obtain copies on his own. Thus, "Umana did not need to discover the documents from Swidler and, thus, the arbitrators did not stand in his way."

**14.** Swidler & Berlin asserts that Umana did not separately make a claim for wrongful termination, but that Umana argued that his objection to Ferguson's conflicting representation was the motivation for the firm's decision to demote him from equity partner status. We have no need to decide whether a demotion, as opposed to a termination, can give rise to a claim that the employer's action was in violation of public policy and whether the Rules of Professional Conduct provide such public policy. See Carl v. Children's Hospital, 702 A.2d 159, 165 n. 9 (D.C.1997) (en banc) (noting, without deciding, that report of violation of Rules of Professional Con-

duct could form basis for a claim of wrongful termination). Also at issue is the important public policy in favor of enforcing agreements to arbitrate. See Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 26, 35, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991) (holding that, absent express legislative intent in the Age Discrimination in Employment Act, the fact that the statute evinces a policy choice of the legislature by providing a cause of action does not preclude arbitration of a statutory claim, consistent with the "liberal federal policy favoring arbitration agreements" reflected in the Federal Arbitration Act); see also Masurovsky v. Green, 687 A.2d 198, 201 (D.C.1996) (citing the "well-established preference for arbitration when the parties have expressed a willingness to arbitrate," and holding the policy favoring arbitration is identical under the DCUAA and the Federal Arbitration Act). Whatever the precise contours of Umana's presentation to the arbitration panel, we note that even the dissenting arbitrator, the one selected by Umana, did not mention Umana's claim based on public policy, suggesting that even he thought it either meritless or not before the arbitration panel.

ducted in accordance with the rules of the American Arbitration Association." We understand the argument to be that Pitofsky's nondisclosure in violation of the AAA Rules was a breach of the contract of the parties that the "arbitration proceeding"—which would include, presumably for this purpose, the arbitrator's disclosure—be conducted as required by the AAA Rules. The argument raises difficult issues concerning the court's authority to vacate an arbitral award, on grounds other than provided by the DCUAA, pursuant to the agreement of the parties. *See Umana,* 669 A.2d at 721–22 (noting court's jurisdiction to review order under the DCUAA); *Grad v. Wetherholt Galleries,* 660 A.2d 903, 907 n. 8 (D.C.1995) (citing *First Options, Inc. v. Kaplan,* 514 U.S. 938, 943, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995) (noting consensual nature of agreement to arbitrate)). *But see Merit Ins. Co.,* 714 F.2d at 681 (holding that to succeed in setting aside an arbitration award under the United States Arbitration Act and Rule 60(b) of the Federal Rules of Civil Procedure, a party must bring itself within the statute and the rule). Even assuming, however, that the parties could by contract dictate the court's scope of review of an arbitral award, usual notions of contract law would require that to lead to a remedy as drastic as vacation of an arbitral award the breach would have to be material. In evaluating the materiality of Pitofsky's nondisclosure, we see no reason to depart from the jurisprudence that defines the type of undisclosed relationship material enough to justify vacation of an award for "evident partiality" under the statute. Parties to a contract of arbitration are deemed to know the relevant statutory law and jurisprudence concerning judicial review; this would be particularly so in the case of attorneys. Therefore, absent any express indication in the contract that the parties intended that they would not be bound by an arbitral award for reasons other than as provided by the law of the District of Columbia which governed the contract, we do not perceive in this case

the basis for a legal argument separate from the one made under the statute, which we have rejected.

### III. Dismissal of Individual Defendants

After this court dismissed the first appeal in 1995 because it was not taken from a final order as Umana's claims against the individual members of the firm had not been heard or decided, the trial court dismissed those claims in 1997 for failure to prosecute. The trial court explained that Umana's complaint having been filed in 1989, the court having ruled in 1990 that all of Umana's claims were subject to arbitration, and Umana's first appeal from the trial court's confirmation of the award having been dismissed in 1995, Umana's complaint against the individual members had been pending for seven years under order to arbitrate, during two of which—since this court's dismissal in 1995—it had been pointed out that those claims were pending and unresolved. The court noted that Umana had done nothing to bring to arbitration his claims against the individual defendants. Such delay, the trial court reasoned, entitled the individual defendants to dismissal of the claims against them, particularly as Umana could give no reason for his failure to pursue the claims. We review the trial court's dismissal for failure to prosecute under Superior Court Civil Rule 41(b) for abuse of discretion. *See White v. Washington Metro. Area Transit Auth.,* 432 A.2d 726, 728 (D.C.1981).

On appeal, Umana argues that the trial court's dismissal was an abuse of discretion because he was hampered in his efforts by the individual defendants' refusal to arbitrate. The trial court considered, and discredited, this claim in light of the record showing Umana's consistent position that his claims against the individual defendants were not subject to arbitration, and that it was the defendants who had obtained the order compelling arbitration. Whatever Umana's legal position may have

been regarding the proper forum for his claims against the individual firm members, however, he did not have the option to do nothing at all. Once the trial court ordered arbitration, he should have moved earlier to compel the arbitration if the defendants were recalcitrant, at which point either he would have had recourse to contempt if the defendants continued to refuse, or, once the arbitration was completed, he could have applied to vacate the award on the ground that his claims against the individual defendants were not subject to the arbitration agreement. Under these circumstances, we perceive no abuse of discretion in the trial court's dismissal of the claims against the individual defendants for Umana's failure to submit those claims to arbitration, as he had been ordered to do. *See District of Columbia v. Serafin,* 617 A.2d 516, 519 (D.C.1992) (noting trial court authority to dismiss an action when plaintiff fails to comply with court order).

For the foregoing reasons, the trial court's denial of the Rule 60(b) motion for new trial, ruling that Umana's claim against Swidler & Berlin was subject to arbitration, confirmation of the arbitral award, and dismissal of the individual defendants are

*Affirmed.*