**CELLULAR RADIO CORP., Appellant,**

**v.**

**OKI AMERICA, INC., Appellee.**

**No. 93–CV–1602.**

District of Columbia Court of Appeals.

Argued Jan. 25, 1995.

Decided Sept. 8, 1995.

---

Louis Rabil, Washington, DC, for appellant.

Michael S. Lieberman, with whom Bernard J. DiMuro, Alexandria, VA, was on the brief, for appellee.

Before STEADMAN, FARRELL and RUIZ, Associate Judges.

RUIZ, Associate Judge:

Appellant, Cellular Radio Corp., and appellee, OKI America, arbitrated a commercial dispute. After OKI prevailed, Cellular applied for an order vacating the arbitral award on the ground that two of the arbitrators displayed evident partiality and that the award was procured by corruption. On cross-motions for summary judgment, the trial court entered an order confirming the award. Because the record does not contain any evidence of evident partiality or corruption, we affirm.

### I.

In April 1989, the parties entered into an agreement to cooperate in developing and testing a system to permit unattended use of credit card cellular telephones in limousines, buses and rental cars. The agreement provided that it "shall be construed and enforced

in accordance with the laws of the State of New Jersey." It also provided that any disputes be settled by arbitration in accordance with the rules of the American Arbitration Association (AAA). The place of arbitration was designated as the District of Columbia.

In July 1991, Cellular demanded arbitration of several allegations of misconduct on the part of OKI. In its Second Amended Statement of Claim, Cellular attempted to state causes of action for fraud, interference with prospective advantage, breach of contract, and breach of fiduciary obligation, for which Cellular claimed ten million dollars in damages.

Under the auspices of the AAA, a panel of arbitrators was selected and the arbitration commenced. After hearing evidence and argument filling over four thousand pages of transcript, the arbitrators denied Cellular's claims in their entirety. The arbitrators reasoned that because Cellular had failed to complete the contemplated initial testing phase due to its own fault, any breach of the contract by OKI could not have materially damaged Cellular.

## II.

When seeking summary judgment, "[t]he moving party bears the burden of clearly demonstrating the absence of a material factual dispute and entitlement to judgment as a matter of law." *Sherman v. District of Columbia,* 653 A.2d 866, 869 (D.C. 1995) (citations and internal quotations omitted). The court must view the record in the light most favorable to the party opposing the motion. *Colbert v. Georgetown Univ.,*

641 A.2d 469, 472 (D.C.1994) (en banc). On appeal, we conduct an independent review of the record applying the same standard as the trial court. *Colbert, supra,* 641 A.2d at 472; *West End Tenants Ass'n v. George Washington Univ.,* 640 A.2d 718, 725 (D.C.1994). We may affirm summary judgment for reasons different from those relied upon by the trial court if they are apparent from the record and were pleaded by the parties. *Greycoat Hanover F St. Ltd. Partnership v. Liberty Mut. Ins. Co.,* 657 A.2d 764, 767 (D.C.1995).

## III.

Cellular advances three grounds for reversal based on the arbitrators' alleged evident partiality and OKI's corruption. *See* D.C.Code § 16–4311(a)(1), (2) (1989).[1] First, Cellular asserts as evidence of evident partiality that one arbitrator, John P. Connolly, failed to disclose fully the fact that he had in two cases served as an attorney opposite OKI's arbitration counsel. Second, Cellular asserts that another arbitrator, Judge Paul J. Pfeiffer, demonstrated evident partiality when he made certain statements during the course of the proceedings. Third, Cellular contends that there was corruption on the part of OKI because it did not produce during the hearing the actual invoices OKI sent to the allegedly competing company.[2] We address each contention in turn.

## A.

Cellular's principal complaint regarding Connolly is that he failed to disclose completely his prior, professional adversary relationship with OKI's counsel.[3] When first

---

1. Subsection 16–4311(a) provides in pertinent part:
   Upon the application of a party, the Court shall vacate an [arbitral] award where:
   (1) The award was procured by corruption, fraud or other undue means;
   (2) There was evident partiality by an arbitrator appointed as a neutral or corruption in any of the arbitrators or misconduct prejudicing the rights of any party; ....

2. Cellular also asserts that New Jersey law should be applied rather than District of Columbia law. Because we hold that the result is the same under New Jersey law and District of Columbia law, we do not address the choice of law issue.

3. Cellular also complains that during the proceedings, OKI's counsel and Connolly had private conversations, which Cellular's counsel observed. It is undisputed, however, that although Cellular and its counsel were aware of the conversations, they did not object to them during the arbitration. Therefore, Cellular waived the objection. AAA Commercial Arbitration Rule 38 provides:

   Any party who proceeds with the arbitration after knowledge that any provision or requirement of these rules has not been complied with and who fails to state an objection thereto in writing shall be deemed to have waived the right to object.

named as an arbitrator, Connolly stated that he had nothing to disclose. Connolly had, however, on two occasions represented a client opposed to a client of the law firm that represented OKI in the arbitration. In the first case, Connolly represented the plaintiff in a suit against several defendants. OKI's counsel represented one of the defendants solely for the purpose of a motion to dismiss or for change of venue. The relevant events occurred about July 1990. In the second case, Connolly represented a plaintiff and OKI's counsel the defendant in an action brought in April 1990 arising out of the sale of some military memorabilia of questioned authenticity. The action settled and a dismissal was entered in May 1991. Connolly had had no other contact prior to the arbitration, either professionally or socially, with OKI's counsel.

At the preliminary hearing in September 1991, Connolly made some disclosure of those facts, the exact nature of which is disputed.[4] Connolly testified in his deposition that he disclosed both cases and that Cellular's counsel did not then object. He made a similar statement in a letter to the AAA after the conclusion of the arbitration. The attorney representing Cellular at the preliminary hearing, Stephen L. Joseph, had a different recollection. He stated in an affidavit that Connolly only disclosed that "he had in the past been involved in an old case on opposite sides with [OKI's] counsel." He averred that he had no recollection of disclosure of any case as recent as 1990 or 1991 and that he was "surprised, shocked and dismayed, even outraged" to learn of the May 1991 dismissal order. Furthermore, he asserted that had he been informed that any case was as recent as 1990 or 1991, he would have objected to Connolly serving as a member of the arbitral panel. He did not, however, give any reason for that position.

In granting summary judgment, the trial court disregarded Joseph's affidavit, terming it "misleading and self serving." We do not feel free to so treat the affidavit. In deciding a motion for summary judgment, we must construe the record in the light most favorable to the party opposing summary judgment. Joseph's affidavit does not make patently impossible assertions; therefore, both this court and the trial court are required to credit the statements it contained in ruling on the summary judgment motion. Thus, for the purpose of deciding the summary judgment motion, we assume that Connolly disclosed only a single "old case" to the parties at the arbitration.

Heretofore, this court has not been presented with the issue of evident partiality arising from a prior or continuing relationship between the arbitrator and a party or its counsel. In our only case addressing evident partiality, *Celtech, Inc. v. Broumand,* 584 A.2d 1257 (D.C.1991), the party challenging the arbitration award contended that evident partiality was shown because the arbitrator failed to explain the reason for his award and the decision was contrary to the language of the agreement. We rejected that claim, stating that evident partiality " 'is confined to situations where the arbitrator has had dealings or relationships with one of the parties that might cause him to be biased.' " *Id.* at 1259 (quoting *Reichman v. Creative Real Estate Consultants, Inc.,* 476 F.Supp. 1276, 1284 (S.D.N.Y.1979)). An involuntary, adversary relationship involving minimal contact that has terminated prior to the arbitration cannot be deemed one that might cause bias. The examples of bias given in *Celtech* indicate that the bias must be due to some financial interest or other loyalty owed to one

The rules were expressly incorporated by the parties' contract. *See also* AAA Commercial Arbitration Rule 1 (deeming rules a part of parties' arbitration agreement whenever agreement provides for arbitration by AAA). Hence, Cellular was bound to adhere to them.

Cellular also complains that several months after the arbitration, Connolly and OKI's arbitration counsel arranged to have lunch together. The lunch did not, however, take place. Apart from its triviality, this post-arbitration contact is

not appropriately considered with respect to a partiality claim. *See Graceman v. Goldstein,* 93 Md.App. 658, 613 A.2d 1049, 1055 (1992) (holding that conduct of arbitrator after proceedings are complete is not proper focus of inquiry into partiality).

4. Apparently, there was no record made of the preliminary hearing.

side of the dispute. *See Celtech, supra,* 584 A.2d at 1259.[5] In the present case, there is no evidence whatsoever of any loyalty or financial interest between Connolly and OKI's counsel. The only conceivable interest that Connolly could have had was in not alienating an attorney that he may in the future have to oppose. That concern does not result from the arbitrator's undisclosed prior encounter with OKI's counsel; indeed it would apply to virtually every lawyer who is an arbitrator.

■■■ Applying New Jersey law, we reach the same conclusion. The New Jersey Supreme Court has drawn a distinction between relationships that are disclosed prior to an arbitration and those that are discovered only after the award. *Barcon Assocs. v. Tri-County Asphalt Corp.,* 86 N.J. 179, 430 A.2d 214 (1981). The court held in *Barcon* that any objection based on a fact that is disclosed and not objected to is waived. *Id.* 430 A.2d at 222. In the absence of full disclosure, however, the award must be vacated if the undisclosed fact would have been such as to lead a reasonable person to object to the designation of the arbitrator in question. *Id.* A reasonable person would by definition have some *reason* linking the undisclosed facts to the doubts concerning partiality. Yet Cellular proffers not a single reason to doubt Connolly's impartiality based on the fact of the prior adversary relationships between him and OKI's counsel. As discussed above, since the only concern we can discern is one that would apply to any arbitrator who is a lawyer, it cannot form the basis for a "reasonable" objection to this particular arbitrator. Therefore, we affirm the grant of summary judgment on the issue of Connolly's evident partiality.[6]

---

5. The cases from other jurisdictions cited by the parties are consistent with such a standard for undisclosed relationships. *Compare Olson v. Merrill Lynch, Pierce, Fenner & Smith,* 51 F.3d 157 (8th Cir.1995) (vacating award where arbitrators failed to disclose that their employers had ongoing business relationships with prevailing party) *and Neaman v. Kaiser Found. Hosp.,* 9 Cal.App.4th 1170, 11 Cal.Rptr.2d 879, 883 (1992) (holding that reasonable impression of bias existed where neutral arbitrator failed to disclose that he had on five previous occasions served as respondent's party arbitrator) *and Johnston v. Security Ins. Co.,* 6 Cal.App.3d 839, 86 Cal.Rptr. 133, 135–36 (1970) (holding vacatur required where neutral arbitrator was acquainted with the prevailing party's counsel and had long been associated with prevailing party's appraiser, including referrals and work on the same case) *and J.P. Stevens & Co. v. Rytex Corp.,* 34 N.Y.2d 123, 356 N.Y.S.2d 278, 280, 312 N.E.2d 466, 468 (1964) (holding that failure to disclose arbitrator's position as sales manager for firm doing $2.5 million in business with party warranted reversal both because of substantiality of business and to encourage full *in limine* disclosure) *and Richco Structures v. Parkside Village,* 82 Wis.2d 547, 263 N.W.2d 204, 208, 213 (1978) (holding that vacatur appropriate because reasonable person would have been concerned about possibility of future business dealings between neutral arbitrator, party and its architect, where neutral had prior business dealings with architect's firm, had bid on projects together, had hired architect to work on two projects, one of which was ongoing, and had had ongoing business dealings with party's arbitrator) *with Consolidation Coal Co. v. Local 1643, United Mine Workers of Am.,* 48 F.3d 125, 129–30 (4th Cir.1995) (holding that evident partiality not es-tablished by arbitrator's failure to disclose fact that brother was employed by prevailing party in capacity unconnected with arbitration) *and San Luis Obispo Bay Properties v. Pacific Gas & Elec. Co.,* 28 Cal.App.3d 556, 104 Cal.Rptr. 733, 741 (1972) (holding that undisclosed referrals between neutral appraiser and party appraiser did not warrant vacatur where there was no compensation for the referrals, the referrals involved only overflow work, and there was no showing of favoritism between themselves and other appraisers).

6. We note that it is insufficient merely to show that a party would have lodged an unreasonable objection to an arbitrator had there been fuller disclosure. That means that a party obtaining fuller disclosure may have more leeway in striking arbitrators than one that gets less disclosure. For example, in the present case, the record shows that one of the arbitrators initially designated by the AAA indicated that he had no facts relating to any partiality to disclose. Subsequently, however, the president of Cellular reminded him that they had both worked on Richard Nixon's presidential campaign some nineteen years earlier. On the basis of that disclosure, at OKI's request, he was disqualified.

As a practical matter, however, a line must be drawn regarding how much disclosure is required. If evident partiality could be established by mere proof that a seasonable but unreasonable objection would have been lodged had some piece of information been disclosed, then the scope of disclosure could be dictated by the caprice of a party or its counsel. We think that the threat that a court will find a proffered objection reasonable is a sufficient goad to full disclosure.

### B.

■ Cellular's second asserted ground for reversal is the alleged evident partiality of arbitrator Pfeiffer, who apparently served as chair of the panel. In support of its contention, Cellular relies on numerous statements Pfeiffer made during the protracted proceedings, which it asserts demonstrate that Pfeiffer intended to disregard the law and had prejudged the case.

Cellular cites two passages in which it asserts Pfeiffer stated that arbitrators are not bound by law. The full context of the first instance is not clear. A speaker, presumably Cellular's counsel, stated,

> I don't know how you're going to feel at the end of the day, but I think that we will trust that you will be guided by principles of law and will decide as you see proper. CHAIRMAN PFEIFFER: You know, fortunately or unfortunately, arbitrators are not required to follow the law. [Cellular's counsel]: No, I understand that Your Honor. I fully appreciate that.

The second instance occurred during an exchange regarding whether the contract created a joint venture with attendant fiduciary obligations between the parties. During that exchange, Pfeiffer stated,

> But the language is here and you have got to give effect to the language. I've been on many, many arbitrations for many, many organizations, including Triple A, and I have never known of an arbitration panel that tore up a contract and rewrote it for the benefit of one of the parties or because they had an idea.
>
> I mean an arbitrator does some—I don't want to say wild things—we do some unusual things. We are not bound by the law. But I have never heard of an arbitration panel—I am just speaking for myself, not these fine fellows. They will probably overrule me—but I have never heard of a situation where there is a contract agreed

to by the parties, carefully screened by lawyers on both sides, where an arbitration panel takes a contract and just tears it up and writes a new one. I've never seen that.

In other passages cited by Cellular to buttress its claim that Pfeiffer had prejudged the case, Pfeiffer repeatedly observed that the agreement did not, by its terms, create a joint venture. At one point, Pfeiffer made a crack that "some corporations make money from lawsuits." In another exchange Cellular's counsel asked Pfeiffer whether he has already decided the case; Pfeiffer denied having done so. Pfeiffer described one provision of the contract as "a little flaky" and interrupted an examination to ask questions of a witness.

In no instance, however, did Pfeiffer prevent Cellular from presenting evidence. Only toward the end of the proceedings did Pfeiffer begin to insist that Cellular move more quickly in its presentation. At the beginning of the proceeding, Pfeiffer expressly stated that the arbitrators would have open minds and would be taking evidence for a couple of weeks. At one time when Pfeiffer pointed out that the contract disclaims any joint venture and Cellular's counsel responded that the contract contained profit sharing provision, Pfeiffer asked that he be directed to the provision, stating, "Maybe I missed something." At other times, Cellular's counsel or the witness agreed that the contract disclaimed any joint venture.

These facts cannot support a finding of evident partiality on the part of Pfeiffer. In *Celtech, supra*, we stated that "[i]f an arbitrator's words were to manifest infidelity to the law and a deliberate disregard of it, this might conceivably amount to 'evident partiality' within the meaning of the statute." 584 A.2d at 1260. We qualified even that statement by limiting its application to "extreme and unusual circumstances."[7] *Id.* In the

---

**7.** Cellular also cites this Court's decision in *Gaddis v. Hongell*, 117 A.2d 230 (D.C.1955), for the proposition that a judge should refrain from expressing an opinion as to the facts until the case has finally been submitted. In *Gaddis*, the trial judge cut off the testimony of the plaintiff without permitting the plaintiff to finish his testimony. *Id.* at 231. After the defendant's evidence, the judge proceeded to rule against the plaintiff without even permitting the plaintiff's attorney to argue the case. *Id.* In those circumstances, this court reversed.

present case, Pfeiffer may have made plain to the participants in the arbitration what his views were in light of the developing evidence. In no instance, however, is it clear that Pfeiffer intended to disregard either the law or the evidence or to short-circuit the hearing process.

Rather than having prejudged the case, it is apparent that Pfeiffer intended to facilitate the arbitral process by making express what he believed to be deficiencies in Cellular's case. As the trial judge stated in her opinion, "[i]t is not unusual for arbitrators—or judges—in the fact-finding process, to pose assumptions or factual inferences *arguendo* in the course of weighing the evidence or pressing for explanations by counsel; this should come as no surprise to either party." In fact, Pfeiffer also asked searching, even hostile, questions of OKI's counsel as part of what he termed his "probing exercise." The few, isolated statements that may perhaps be viewed as intemperate fall far short of demonstrating evident partiality, particularly in the context of what all concede to be protracted and at times tedious proceedings.

■■■ The rule against overturning an arbitral award based on "disregard of the law" is even clearer in New Jersey than in the District. The New Jersey Supreme Court recently ruled that arbitration awards may only be vacated for fraud, corruption or similar wrongdoing on the part of the arbitrators. *Tretina Printing v. Fitzpatrick & Assocs.*, 135 N.J. 349, 640 A.2d 788, 793 (1994). If the parties wish to have review by a court of legal decisions of arbitrators, they must specify the standard in the contract. *Id.* It appears that New Jersey law would preclude any argument based on a "disregard" of the law. *See id.* 640 A.2d at 794 (refusing to "shoehorn" into statutory provision for court correction of errors in awards that do not affect the merits authority to remand where there is ambiguity or lack of specificity in the arbitrators' analysis). Thus, under *Tretina*,

In the present case, however, Pfeiffer never prevented Cellular from presenting noncumulative evidence. Moreover, his repeated statements indicate that he was open to further proof and argument of counsel regarding the matters in dispute.

a court cannot review in any way the merits of the arbitrators' decision unless specifically provided in the arbitration agreement. For reasons already discussed, we cannot imagine that a New Jersey court would find that any of Pfeiffer's other remarks, either severally or taken as a whole, demonstrate the requisite degree of wrongdoing. Therefore, under New Jersey law as well, there is no basis for vacatur on the ground of Arbitrator Pfeiffer's evident partiality.

### C.

■■■ Cellular's allegation of corruption arises from a discovery dispute during the arbitration proceeding. Prior to the arbitration hearing, Cellular moved to compel OKI to produce documents relating to its dealings with a competing cellular telephone company, including invoices. The panel granted the motion. Apparently OKI produced only a computer summary of the invoices, rather than copies of the actual invoices. Cellular demanded that the actual invoices be produced. The panel ruled, however, that actual invoices were not necessary in light of the listing of the transactions.

■■■ Because the arbitral panel addressed and disposed of the discovery issue by ruling that the physical copies would be cumulative of the computer summary, there is no basis for vacatur. The arbitrator is the judge of the relevancy of evidence. AAA Commercial Arbitration Rule 31; *see also Checkrite of San Jose v. Checkrite, Ltd.*, 640 F.Supp. 234, 237 (D.Colo.1986) (holding that evidentiary ruling will not be reviewed without a showing of exceptional circumstances). The panel found that the actual invoices were irrelevant. As discussed above, Cellular has presented no basis for finding that the arbitrators' decision was the product of wrongful conduct. Hence, the arbitrators' resolution of the discovery dispute against Cellular affords no basis for vacatur.[8]

8. Moreover, because the arbitrators rested their decision on their finding that Cellular was at fault in failing to complete initial testing, it seems that Cellular was not prejudiced by the lack of the additional evidence. *See* D.C.Code § 16–4311(a)(1) (providing that award shall be vacated where "[t]he award was *procured* by corruption,

In the absence of any grounds for vacating the arbitral award, the trial court was correct in confirming the award in favor of OKI.

*Affirmed.*

---

fraud or other undue means") (emphasis added); *Konkar Maritime Enters. v. Compagnie Belge D'Affretement,* 668 F.Supp. 267, 274 (S.D.N.Y. 1987) ("A party moving to vacate an arbitration on the ground that the arbitrator failed to insure that relevant documentary evidence in the hands of one party is fully and timely made available to the other side must show some resulting prejudice.") (internal quotation omitted).